# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
Geragos@Geragos.com

MARK J. GERAGOS   (SBN 108325)
BEN J. MEISELAS      (SBN 277412)
Attorneys For Plaintiff DEVIN ROSE On Behalf Of
Himself And All Others Similarly Situated

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVIN ROSE, On Behalf of Himself and All Others Similarly Situated;<br><br>Plaintiff,<br><br>vs.<br><br>ZARA USA, INC., a New York Corporation, and DOES 1-10;<br><br>Defendants.<br>_____ | Case No. 2:16-cv-6229<br><br>**CLASS COMPLAINT FOR DAMAGES**<br><br>1. **Negligence**<br>2. **Negligence Per Se**<br>3. **Unfair Business Practices**<br>4. **Unjust Enrichment**<br>5. **Fraud**<br><br>**DEMAND FOR JURY TRIAL** |

# COMPLAINT

1.    Plaintiff Devin Rose brings this putative class action, on behalf of himself and the putative class comprised of potentially millions of similarly situated consumers, against Zara USA, Inc. ("Zara"), based on Zara's deceptive pricing practices.

2.    Zara develops, markets, advertises, brands, promotes, distributes, and sells—through retail and online—fashion apparel designed to reflect consumer trends and provide buyers with high-fashion looks for affordable prices.  Zara is the flagship brand of Inditex, the world's largest clothing retailer.[1]

3.    Zara began in 1975 with a single modest store in northwest Spain, but quickly achieved tremendous success through the use of revolutionary design, manufacturing, and distribution systems.[2]  Today, Zara is a leading international fashion company with more than 2,100 stores in 88 countries.[3]

4.    Zara is notable for its massive celebrity following.  Multiple fashion and entertainment websites have featured stories discussing famous personalities who have been spotted sporting Zara fashions.[4]  These articles emphasize the fact that while Zara clothing appeals to wealthy, influential, and highly fashion-conscious individuals, it remains affordable, and within reach of the average consumer.[5]

5.    However, behind its façade of attainable elegance, Zara is engaged in a widespread practice of deceiving American consumers through a classic bait and switch.

---

[1] *See* Thomas Mulier & Rodrigo Orihuela, *Inditex Proft Beats Estimates on Online Expansion*, *Bloomberg* (June 14, 2016, 10:06 PM), http://www.bloomberg.com/news/articles/2016-06-15/inditex-first-quarter-profit-beats-estimates-on-online-expansion; Susan Berfield & Manuel Baigorri, *Zara's Fast-Fashion Edge*, *Bloomberg* (Nov. 14, 2013, 8:31 PM), http://www.bloomberg.com/news/articles/2013-11-14/2014-outlook-zaras-fashion-supply-chain-edge.

[2] *See* Berfield & Baigorri, *supra* note 1; *Zara*, *Inditex*, http://www.inditex.com/en/brands/zara (last visited Aug. 15, 2016).

[3] *See Zara*, *supra* note 2.

[4] *See, e.g.*, Marisa Tom, *7 Star-Studded Reasons You Should Be Shopping at Zara Right Now*, *POPSUGAR* (June 26, 2012), http://www.popsugar.com/fashion/Celebrities-Wearing-Zara-23729153#photo-23729153.

[5] *Id.*

6.     Millions of consumers who have purchased clothing at Zara stores have been gulled into paying prices well in excess of the tag prices.  Specifically, Zara's practice of assuring consumers that the discrepancy between the tag price in euros (€), and the dollar ($) price at the register is merely the result of an appropriate application of the conversion rate from euros to dollars.  In fact, the conversion rate is entirely misapplied—to the extent it is even applied at all—such that U.S. consumers are paying far more than the true prices of the products.

7.     An investigation into Zara's unlawful pricing practices demonstrates that Zara perpetrates its deception in two ways.

    a. ***Clothing Tagged Only in Euros ("Bait-and-Switch Pricing"):*** Many of Zara's products are tagged only with a euro price.  This alone is confusing to many consumers and lures them to the register.  Compounding matters, not only is the same product sold for a substantially higher amount in dollars, but the product is always sold well in excess of the true converted amount if the euro price on the tag were properly converted to dollars.

    b. ***Euro Price Covered with Dollar Sticker ("Cover-Up Pricing"):*** In those instances where Zara includes a price in dollars, the dollar amount is almost always applied in the form a pricing label affixed over the euro price actually printed on the tag.   In this context, the dollar amount similarly is far in excess of the true converted amount if the euro price printed on the tag were properly converted to dollars.

8.     In both cases, and as further discussed below, Zara violates State and Federal law by luring consumers to the register with perceived lower prices using a foreign currency and surreptitiously imposing an arbitrary markup without making an appropriate, or any, disclosure to the consumer.

9.     Worse yet, Zara has perpetuated a corporate policy of misinforming

consumers who do inquire into why the cost of clothing they purchased was in excess of the tag price by telling these consumers that the markup is based on an appropriate conversion rate tied apparently to some date in the remote past.

10.     As discussed below, the putative class representative in this action was informed by store representatives, and observed store representatives informing others, that the ultimate price for clothing in dollars reflected the conversion rate that existed at the time the apparel was manufactured. This was false.

11.     Putative Class Representative Devin Rose purchased three shirts from a Zara retail store in Sherman Oaks, California on Tuesday, May 17, 2016.

12.     Mr. Rose was drawn in by the low cost of these garments, each having displayed a price of just "€9.95" on its tag.

13.     It was not until Mr. Rose paid for his purchases at the register that he discovered, to his dismay, that he had actually been charged $17.90 for each shirt. When Mr. Rose questioned the cashier about this discrepancy, he was told that the price difference was due to the conversion rate between euros and dollars.  Just as Mr. Rose was being told this, another customer called in to the store to inquire about the very same kind of price issue.  This customer was given the same explanation.

14.     Upon further questioning of the Zara employee, Mr. Rose was told that the store used a device to calculate the conversion rate applicable to each item, but that this device had been lost.

15.      When Mr. Rose confronted a purported supervisor at the Zara store about the price increase and the supposed loss of the store's exchange rate calculation device, he was told that no such device existed, but that the conversion rate that had been applied to his purchases was nevertheless accurate.  This purported supervisor also refused to provide contact information for a manager.

16.     The following day, Mr. Rose called a Zara customer service hotline to inquire about the pricing issue.  The customer service representative with whom he

spoke claimed that the conversion rate applied to each item that Mr. Rose had purchased was the one that had prevailed at the time that item was manufactured. When Mr. Rose pressed this issue, the customer service representative asked him what price he felt he should have paid for each item, almost as if the representative was attempting to negotiate with him.

17.    At the time that Mr. Rose made his purchases, the actual euro-dollar exchange rate would have resulted in his €9.95 shirts costing approximately $11.26 each.  Instead, however, Zara charged Mr. Rose $17.90 per garment, a markup of nearly 60%.

18.    Upon further investigation, Zara has been engaged in such fraudulent pricing practices across the United States.  On average, consumers are being charged $5 to $50 more than the lowest tag price in euros.  In the aggregate, the shopping experiences of ordinary consumers like Mr. Rose, have resulted in Defendant Zara being unjustly enriched to the tune of billions of dollars.

19.    California, like many states, has moved away from anachronistic legal doctrines that provide that the price quoted on a tagged product or commodity is merely an invitation to deal or treat.  While it is true that at common law, price markings were held merely to demonstrate a merchant's willingness to bargain, and that they therefore did not obligate retailers to sell goods as marked, contemporary law has harshly rebuked this ancient notion.  Specifically, section 12024.2 of the California Business and Professions Code makes it a criminal offense to "[c]harge an amount greater than the lowest price posted on [a product] itself or on a shelf tag that corresponds to the [product] . . . ."  This statute was enacted specifically to displace the antiquated "invitation to treat" doctrine, which California and many other jurisdictions feel is harmful and deceptive to consumers.[6]

---

[6] *See, e.g.*, 720 Ill. Comp. Stat. Ann. § 5/17-5.7(b) (West 2016) ("Any person . . . who, with intent to sell . . . merchandise . . . to the public . . . places before the public . . . in this State, in a . . . card, label . . . or in any other way similar . . . to the foregoing, [a] . . . statement of any sort regarding merchandise . . . which . . . contains any assertion . . . . which is untrue, misleading or deceptive, shall be guilty of a Class A misdemeanor."); Kan. Stat. Ann. § 83-219(a) (West 2016) ("It shall be unlawful for any person: . . . to misrepresent, or represent in a manner calculated or tending to

20.     Federal law similarly rejects the "invitation to treat" policy with statutes designed to protect consumers from being misled.[7]

21.     Mr. Rose brings this putative class action to compel Zara to be a transparent and responsible corporate citizen by ceasing its practice of defrauding customers and making whole those consumers who have been victims of its deceptive practices.

## JURISDICTION AND VENUE

21.     This Court has diversity jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds $5,000,000 and is a class action in which some members of the class are citizens of states different from the States where Defendants are citizens.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District as Defendants: (a)   are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution and sale of Zara products in this District; (b) currently do substantial business in this District; and (c)   are subject to personal jurisdiction in this District.

## PARTIES

23.     At all times relevant to this matter, Plaintiff Devin Rose was a resident of Los Angeles County, California and a citizen of California.  Plaintiff purchased Zara clothing from a Zara retail store located in Los Angeles County.

24.     Plaintiff, on behalf of himself and the putative national class and

---

mislead or deceive an actual or prospective purchaser, the price of an item offered, exposed or advertised for sale at retail . . . ."); Mich. Comp. Laws Ann. § 445.315(4) (West 2016) ("A person shall not make . . . an advertisement with the intent . . . not to sell . . . goods . . . at the price stated in the advertisement . . . ."); Va. Code Ann. § 18.2-217(a) (West 2016) ("Any person . . . who . . . advertises . . . to the public any . . . goods . . . with intent not to sell at the price . . . advertised . . . shall be guilty of a Class 1 misdemeanor.").

[7] *See, e.g.*, 16 C.F.R. § 238.2(a) (2016) ("No statement . . . should be used in any advertisement which creates a false impression of the . . . value . . . of the product offered . . . .").

putative California subclass, who purchased Zara clothing products (the "Putative Class") during the Class Period, as further defined below, brings this class action against Defendants Zara USA, Inc. and Does 1-10.

25.   Plaintiff's allegations are based in part on the investigation of counsel, including but not limited to reviews of advertising and marketing material, public filings, articles, journal actions, and other publicly available information, and thus on information and belief, except as to the individual actions of Plaintiff, as to which Plaintiff has personal knowledge.

26.   Plaintiff has been damaged in that Zara's deceptive pricing practices caused him to overpay for the garments he purchased.  Plaintiff, and members of the Putative Class, would have paid less for Zara's products had they been appropriately priced.

27.   Defendant Zara, Inc. is a New York corporation.  Zara manufactures and sells clothing.  It offers a wide variety of clothing products for men, women, and children of all ages.  Zara advertises and sells its products both online and through retail stores around the world.

28.   Each of the DOES 1-10 is the agent, servant, partner, joint-venturer, co-venturer, principal, director, officer, manager, employee, or shareholder of one or more of its co-defendant(s) who aided, abetted, controlled, and directed or conspired with and acted in furtherance of said conspiracy with one or more of its co-defendant(s) in said co-defendant(s)' performance of the acts and omissions described below.  Plaintiff sues each of these Doe Defendants by these fictitious names because Plaintiff does not know these Defendants' true names and capacities. Despite reasonable efforts, Plaintiff has not been able to ascertain the identities of DOES 1-10.

29.   Plaintiff, on behalf of himself and the putative class, alleges negligence, negligence per se, unfair business practices, unjust enrichment, and fraud through

Defendants' pricing and labeling.

30.     At all times relevant, Plaintiff was attracted to Zara products because of the prices featured on their price tags.

## FACTUAL ALLEGATIONS

31.     Zara was founded in 1975 by Amancio Ortega.[8]  Ortega served as chairman of Zara's parent company, Inditex until recently, having stepped down in 2011.[9]  He is now the second richest person in the world.[10]

32.     Zara manufactures and markets fashion clothing for men, women, and children of all ages.

33.     Zara's garments are purchased and worn by numerous high profile celebrities.

34.     For example, the following are images of Duchess of Cambridge Kate Middleton and reality television personality Kim Kardashian prominently carrying Zara shopping bags:



Kate Middleton with Zara shopping bag[11]



Kim Kardashian and Brittny Gastineau with Zara shopping bags[12]

---

[8] Berfield & Baigorri, *supra* note 1.

[9] *#2 Amancio Ortega*, *Forbes* (Aug. 16, 2016), http://www.forbes.com/profile/amancio-ortega/.

[10] *See id.*

[11] Allie Merriam, *Kate Middleton Stops to Shop at Zara!*, *POPSUGAR* (Nov. 18, 2011), http://www.popsugar.com/celebrity/Kate-Middleton-Shopping-Zara-Pictures-20469726#photo-20469726.

35.     A major part of Zara's appeal is that despite its popularity with wealthy and highly fashion-conscious celebrities like those pictured above, its products remain affordable, and within reach of the average consumer.  As one source put it, "Not only do these A-list wardrobes look cool, they've also got a price tag that won't wipe out your bank account."[13]

36.     While enjoying a reputation for making high fashion available to average consumers and basking in the glow of the many celebrities that publicize its wares, Zara surreptitiously engages in deceptive pricing practices that defraud consumers across America with every purchase.

37.     Zara marks the price tags on many of its products with only a euro price.  Since the euro is a larger unit of currency than the American dollar, these euro prices lead shoppers in the United States to believe that Zara's products are less expensive than they actually are.  Thus, Zara customers are lured in by the brand's seemingly low prices, and it is only upon bringing the items they intend to purchase to the register that these customers discover their true costs.  To make matters worse, however, the prices that consumers are ultimately quoted—prices that are only revealed when the items have been already been scanned and the consumer is asked for payment—are not accurate American dollar equivalents to the euro prices on the tags, but rather arbitrarily inflated amounts that are substantially higher.

38.     Even on those products that Zara does take the time to reprice, the deceptive marking practices persist.  Rather than converting an original euro price to an equivalent American dollar price, Zara simply chooses a higher dollar amount that bears no relation to the relevant conversion rate, prints it on a label, and affixes that label over the original euro price actually printed on the garment tag.

39.     Plaintiff, and Putative Class representative, Devin Rose, purchased three

---

[12] *Kim Kardashian and Zara Paper Shopping Bag*, *coolspotters*, http://coolspotters.com/public-figures/kim-kardashian/and/handbags/zara-paper-shopping-bag#medium-2022343 (last visited Aug. 16, 2016).

[13] Tom, *supra* note 4.

Zara shirts from a Sherman Oaks, California Zara retail store on May 17, 2016.  He was initially attracted to their tag price of "€9.95."  Mr. Rose had his purchases rung up at the checkout register, and only after having tendered payment for them did he realize, to his dismay, that he had actually been charged $17.90 for each shirt.

40.    When Mr. Rose inquired into the price discrepancy, he was told by a Zara employee that the price difference resulted from the euro-to-dollar conversion rate.  The employee stated the store used a device to calculate the correct conversion rate for each item, but that that device had been lost.  Mr. Rose then asked to speak with the employee's supervisor.   As Mr. Rose waited for the supervisor, he witnessed a Zara employee address a price discrepancy question similar to his own over the telephone.  The employee told the customer who had called in the same story that Mr. Rose had been told, that the discrepancy between the price on the tag and the price actually charged reflected the euro-to-dollar conversion rate, and that the store had lost its conversion rate calculation device.   When the purported supervisor arrived, Mr. Rose brought up the conversion device and asked why the price discrepancy did not reflect the then-current euro to dollar exchange rate.  The purported supervisor said that the store did not use any sort of conversion device, but she assured Mr. Rose that the conversion rate that had been applied to his purchases was correct.  Mr. Rose persisted with his concerns, but Zara employees refused to provide him with contact information for a manager.  It was at that point that Mr. Rose realized he was being sold a bill of good.

41.    The following day, Mr. Rose called a Zara customer service line to inquire about the price discrepancy issue.  The customer service operator with whom he spoke told him that the conversion rate that was applied to his purchases was that which had prevailed at the time that each item was manufactured.  When Mr. Rose expressed dissatisfaction with this answer, the operator asked him questions like "what do you think you should pay for this item?," almost as if the operator was

attempting to negotiate with him.

42.    Below are photographs of the three shirts that Mr. Rose purchased from Zara on May 17, 2016, as well as a photo of his receipt.  As can be seen clearly in the photographs, the shirts each bear a tag price of €9.95, but the amount ultimately charged for each was $17.90.






1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

43.     Applying the correct conversion rate as of the date of purchase, Mr. Rose's shirts should have cost approximately $11.26 each.  Instead, these items cost more than one and a half times that.

44.     Further examples of Zara's deception can be seen in the images below, which depict its practice of affixing inflated U.S. dollar prices directly over original euro prices.  These photographs demonstrate the vast price discrepancy that becomes apparent when the stuck-on dollar label is juxtaposed with the original euro price actually printed on each tag.

 



45.    While it is obvious that prices for goods will differ when expressed in different international currencies, companies that make a legitimate conversion can do so at the time that the original price is assigned, and then place the differing international prices side by side as shown below.  This is not Zara's practice.



46.    The fact that in just the one instance during which Mr. Rose visited a Zara store he witnessed a customer other than himself calling in to complain about the very same price discrepancy issue that he had encountered demonstrates just how widespread and harmful this practice is.

47.    But for Defendant Zara's practice of deceptive pricing, Plaintiff and the Putative Class would either have paid substantially less for Defendant Zara's products, or else would not have purchased them at all.

///

///

///

///

## CLASS ACTION ALLEGATIONS

48.    Plaintiff brings this class action on behalf of himself and all others similarly situated as Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

49.    Plaintiff seeks to represent a "National Class" defined as follows:

**All United States residents who purchased Zara products, excluding Defendants, Defendants' officers, directors, and employees, Defendants' subsidiaries, those who purchased the products for the purpose of resale, the Judge to which this case is assigned and the immediate family of the Judge to which this case is assigned.**

50.    Plaintiff seeks to represent a "California Subclass" defined as follows:

**All California residents who purchased Zara products excluding Defendants, Defendants' officers, directors, and employees, Defendants' subsidiaries, those who purchased the products for the purpose of resale, the Judge to which this case is assigned and the immediate family of the Judge to which this case is assigned.**

51.    Plaintiff is a member of the Class that he seeks to represent.  Plaintiff is a United States resident who purchased Zara products.

52.    Plaintiff is a member of the Class that he seeks to represent.  Plaintiff is a California resident who purchased Zara products.

53.    The definition of the Class is narrowly tailored so as to include only identifiable Class Members who can be identified through Defendant's wholesale sale information.  The Class has no time limit because, as discussed below, the statute of limitations has been tolled by the Defendants' fraudulent concealment of the true nature of Zara's pricing.

54.     The proposed Class is so numerous that the individual joinder of all its members, in this or any action, is impracticable.  The exact number or identification of the members of the Class is presently unknown to Plaintiff, but it is believed to comprise thousands of California residents, and millions of United States residents, thereby making joinder impractical.

55.     Common questions of fact and law exist as to all Class Members and predominate over questions affecting only individual members. These include, but are not limited to, the following:

(a)     Whether, in the course of business, Defendants represented Zara's products as having characteristics, uses, benefits or qualities that they do not have when used in a customary manner by consumers;

(b)     Whether the claims Defendants made and are making regarding Zara's garments are unfair or deceptive, specifically, whether consumers are deceived by (1) Defendants' practice of "bait and switch pricing" (drawing in consumers with tag prices in euros, only to inform them at the register that the true dollar prices are much higher), and (2) Defendants' practice of "cover-up pricing" (affixing labels bearing inflated dollar prices over the euro prices actually printed on the products' tags);

(c)     Whether Defendants knew at the time the consumer transactions took place that the consumers were falsely being told that the price increases they encountered were solely a reflection of the euro-to-

dollar exchange rate;

(d)   Whether Defendants knowingly made misleading statements in connection with consumer transactions that consumers were likely to rely upon to their detriment;

(e)   Whether Defendants have been unjustly enriched by the sale of Zara clothing to the Plaintiff and Class;

(f)   Whether the Plaintiff and the Class members suffered monetary, general, consequential, and special damages and, if so, what is the measure of those damages; and

(g)   Whether Plaintiff and the Class members are entitled to an injunction, damages, restitution, equitable relief and other relief deemed appropriate and the amount and nature of such relief.

56.   Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and all Class Members purchased Zara clothing that was designed, tested, manufactured, marketed, advertised, warranted and/or sold, and placed in the stream of commerce by Defendant Zara.  Plaintiffs and all other Class Members purchased Zara clothing for either a price different and substantially higher than that which was advertised, or for a price different and substantially higher than that which was originally assigned.  The nature of the misrepresentation is the same for the Plaintiff and all Class Members, even if they purchased different types of Zara clothing.

57.   The factual bases of Defendants' misconduct are common to the Class Members and represent a common thread of deceptive advertising resulting in injury

to all Class Members.  Plaintiff is asserting the same rights, making the same claims, and seeking the same relief for himself and all other Class Members.  The central question of whether Defendants' representations are accurate and truthful is common to all Class Members and predominates over all other questions, legal and factual in this litigation.

58.    Plaintiff is an adequate representative of the proposed Class because he is a Class Member and does not have interests that conflict with those of the other Class members he seeks to represent.  Plaintiff is represented by experienced and able counsel, who has litigated numerous class-action lawsuits, and Plaintiff's Counsel intends to prosecute this action vigorously for the benefit of the proposed Class.  Plaintiff and his Counsel will fairly and adequately protect the interests of the Class Members.

59.    A class action is the superior available method for the efficient adjudication of this litigation because:

    a. The prosecution of separate actions by individual members of the Class would create a foreseeable risk of inconsistent or varying adjudications which would establish incompatible results and standards for Defendant;

    b. Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their own separate interests;

    c. Class action treatment avoids the waste and duplication inherent in potentially thousands of individual actions, and conserves the resources of the courts; and

d. The claims of the individual class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the members of the Class to individually seek redress for Defendants' wrongful conduct.  Even if the members of the Class could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

60.    A class action for injunctive and equitable relief pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate.  Defendants acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Defendants' actions are generally applicable to the Class as a whole, and Plaintiff, on behalf of the Class, seeks damages and injunctive relief described herein. Moreover, Defendants' systemic policy and practices make declaratory relief with respect to the Class as a whole appropriate.

## FRAUDULENT CONCEALMENT

61.    Defendant Zara was and remains under a duty to Plaintiff and the Putative Class to disclose the facts, as alleged herein.  The duty to disclose the true facts arises because, as the manufacturer, Defendant Zara is in a superior position to know the true character and quality of its products and the true facts are not

something that Plaintiff and Putative Class members could, in the exercise of reasonable diligence, have discovered independently prior to coming within a close proximity of purchasing Zara clothing.

62.     Defendants intentionally concealed and/or failed to disclose the true pricing of Zara garments for the purpose of inducing Plaintiff and Putative Class members to act without knowledge of the true value of these products.

63.     Plaintiff and the Putative Class members justifiably acted upon, or relied upon to their detriment, the concealed and/or nondisclosed material facts as evidenced by their purchase of Zara products for inflated prices.  Had they known of the true nature of Defendant Zara's pricing, Plaintiff and the Putative Class members would not have purchased (or would have paid less for) Zara's wares.

64.     As a direct and proximate cause of Defendants' misconduct, Plaintiff and the Putative Class members have suffered actual damages.  Defendants' conduct has been and is malicious, wanton and/or reckless and/or shows a reckless indifference to the interests and rights of others.

<u>**FIRST CAUSE OF ACTION**</u>

**Negligence**

**(On Behalf of the National Class, or, alternatively, the Putative California Subclass)**

65.     Plaintiff restates each and every paragraph of this Complaint as if fully rewritten herein.

66.     Defendants owed a duty to Plaintiff and the Putative Class to exercise due care in the operation of their business so as to avoid deceiving Plaintiff and the Putative Class and causing Plaintiff and the Putative Class to rely on representations of fact that were untrue.

67.     Defendants breached that duty when they allowed garments to be made available for sale to Plaintiff and the Putative Class that bore expressions of their

prices only in euros, or that featured dollar prices merely affixed over their actually-printed euro prices.

68.     In conducting themselves in the manner set forth herein above, Defendants have caused Plaintiff and the Putative Class to suffer economic damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Negligence Per Se

### (On Behalf of the National Class or, alternatively, the Putative California Subclass)

69.     Plaintiff restates each and every paragraph of this Complaint as if fully rewritten herein.

70.     Plaintiff Devin Rose, and the Putative National Class and California Subclass were injured by the failure of Defendant Zara to comply with 16 C.F.R. Section 238.0 *et seq.* and California Business and Professions Code section 12024.2.

71.     16 C.F.R. § 238.2(a) provides: "No statement . . . should be used in any advertisement which creates a false impression of the . . . value . . . of the product offered . . . ."

72.     Cal. Bus. & Prof. Code Section 12024.2(a) states: "It is unlawful for any person, at the time of sale of a commodity, to . . . [c]harge an amount greater than the lowest price posted on the commodity itself or on a shelf tag that corresponds to the commodity . . . ."

73.     Legislative history of the statutes cited herein as well as other similar laws clearly demonstrates that these provisions are designed to do away with the common law "invitation to treat" doctrine and to protect consumers from deception created by misrepresentations regarding the prices of goods for sale, the very type of injury that Plaintiff and the Putative Class in this case have suffered.

74.     Defendants, through their practices of bait and switch pricing and cover-

up pricing are therefore liable for creating false impressions of the value of their products and for charging prices greater than the lowest price posted on each product.

75.    As a direct and proximate result of Defendants' violations of Federal and State law, Plaintiff and the Putative Class have suffered damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

## UFAIR BUSINESS PRACTICES

### (On Behalf of the California Subclass)

76.    Plaintiff restates each and every paragraph of this Complaint as if fully rewritten herein.

77.    For the reasons discussed above, Defendants have engaged in unfair competition and prohibited activities.

78.    Unfair competition includes any unlawful, unfair, or fraudulent business act or practice, as well as unfair, deceptive, untrue, or misleading advertising and any act prohibited by Cal. Bus. & Prof. Code § 17200.

79.    Plaintiff and the putative class seek equitable relief and to enjoin Defendants from engaging in their current practice and scheme of using bait and switch pricing and cover-up pricing to deceive consumers as to the true value of Defendant Zara's products and to dupe them into paying far more for these products than their true and fair value.

80.    Pursuant to Cal. Bus. & Prof. Code § 17200 *et seq.*, Plaintiff and the Putative Class seek an order enjoining the above-described wrongful acts and practices of the Defendants and for restitution and disgorgement.

///

///

///

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

**(On Behalf of the National Putative Class or, alternatively,**

**the California Subclass)**

81.     Plaintiff restates each and every paragraph of this Complaint as if fully rewritten herein.

82.     Plaintiff conferred a tangible economic benefit upon Defendants by purchasing Zara clothing products.  Plaintiff and members of the Putative Class would have paid less to Defendants at the time this benefit was conferred had they known that Defendant Zara's products were inaccurately and deceptively priced.

83.     As a result of Defendants' deceptive, fraudulent, and misleading pricing, Defendant was enriched, at the expense of the Plaintiff and each member of the Putative Class, through the payment of the ultimate dollar purchase price for Zara clothing products.

84.     Under the circumstances, it would be against equity and good conscious to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff and members of the Putative Class in light of the fact that the articles of clothing purchased by Plaintiff and members of the Putative Class were not sold for their advertised prices or were sold for prices other than those actually and originally printed on their tags.

85.     It would thus be unjust and inequitable for Defendants to retain the benefit conferred by Plaintiff and the Putative Class without restitution or disgorgement of monies paid to Defendants for Zara clothing products, or such other appropriate equitable remedies as appropriate, to the Plaintiff and other members of the Putative Class.

///

///

# FIFTH CAUSE OF ACTION

## FRAUD – INTENTIONAL MISREPRESENTATION AND CONCEALMENT OF FACT

### (On Behalf of the National Putative Class or, alternatively, the California Subclass)

86.     Plaintiff restates each and every paragraph of this Complaint as if fully rewritten herein.

87.     Defendants intentionally, willfully, falsely, and knowingly uniformly misrepresented material facts in writing that relate to the value of Zara clothing products.  Specifically, Defendants intentionally and willfully represented that Zara products could be bought for particular prices expressed in euros when in fact they could not be.  Defendants also represented tag prices in dollars as being accurate conversions of original euro prices of garments when they in fact were not.

88.     Defendants' uniform written misrepresentations were made with the intent that the general public, including Plaintiff and the Putative Class, would rely upon them.  Defendant's representations were made with knowledge of the falsity of such statements, or in reckless disregard of the truth thereof, and gave Defendant an unjust advantage and caused a loss to Plaintiff and the Putative Class members. Defendants' misrepresentations of low prices were so central to consumers' selection of Zara products that Defendants knew and intended that consumers would rely on those misrepresentations in determining whether to purchase Zara apparel as opposed to other available alternatives.

89.     In actual and reasonable reliance upon Defendants' misrepresentations, Plaintiff and the Putative Class members purchased Zara products believing that they were paying the tag prices.  Plaintiff and the Putative Class members were unaware of the true facts concerning Defendants' pricing scheme, which were concealed from the Plaintiff and the Putative Class members.  If Plaintiff and the Putative Class

members had been aware of the concealed facts, Plaintiff and the Putative Class members would not have purchased Zara apparel at all or for the price paid. Plaintiff's and the Putative Class members' reliance on the representations of the Defendants was reasonable.

90.    Defendants misrepresented material facts with the intent to defraud Plaintiff and the Putative Class members. Plaintiff and the Putative Class members were unaware of the intent of Defendants and relied upon these representations in agreeing to purchase Zara clothing.

91.    In actual and reasonable reliance upon Defendants' misrepresentations, Plaintiff and the Putative Class members purchased Zara apparel items and paid more than they believed was the value of these products.  The direct and proximate result of this was injury and harm to Plaintiff and the Putative Class members because:

    (a)    they would not have purchased Zara clothing if the true facts concerning its pricing had been known; or

    (b)    they paid price premiums for Zara products due to the deceptive labeling of these products.

## PRAYER FOR RELIEF

WHEREFORE, the representative Plaintiff, on behalf of himself and the Members of the Class defined herein, prays for judgment against the Defendants as follows:

    A.    For an order certifying this action and/or common issues raised herein as a "Class Action" under the appropriate provision of Federal Rule of Civil Procedure 23(a), 23(b) and 23(c); designating Class Representatives; and appointing the undersigned to serve as class counsel;

B.  For notice of class certification and of any relief to be disseminated to all Class Members and for such other further notices as this Court deems appropriate under Fed. R. Civ. P. 23(d)(2);

C.  For an award of compensatory damages in an amount to be determined for all injuries and damages described herein;

D.  For an award of punitive damages to the extent allowable by law, in an amount to be proven at trial;

E.  For an award of restitution and disgorgement of Defendants' revenues to the Plaintiff and the proposed Class members;

F.  For an award of declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein and directing Defendants to identify, with Court supervision, victims of their conduct and to pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by the Court to be wrongful;

G.  For an order compelling Defendants to engage in a corrective advertising campaign;

H.  For an award of costs; and

I.  For provision of such other relief as may be just and proper.

Dated:  August 19, 2016              GERAGOS & GERAGOS, APC

                                       /s/ Mark J. Geragos
                                      MARK J. GERAGOS
                                      BEN J. MEISELAS
                                      Attorneys For Plaintiff Devin Rose
                                      On Behalf Of Himself And All Others
                                      Similarly Situated

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated:  August 19, 2016                    GERAGOS & GERAGOS, APC


                                            /s/ Mark J. Geragos
                                           MARK J. GERAGOS
                                           BEN J. MEISELAS
                                           Attorneys For Plaintiff Devin Rose
                                           On Behalf Of Himself And All Others
                                           Similarly Situated